IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF IOWA
DAVENPORT DIVISION

| | |
|---|---|
| BRIAN DOE, JANE DOE, and ROBERT DOE, Pro se, | ) Case No. 3:15-cv-00085-SMR-SBJ<br>)<br>) |
| Plaintiffs, | )<br>)<br>) |
| v. | )<br>)<br>) |
| PLEASANT VALLEY SCHOOL DISTRICT, and MISSISSIPPI BEND AREA EDUCATION AGENCY, | ) ORDER ON CROSS MOTIONS FOR<br>) SUMMARY JUDGMENT<br>)<br>)<br>) |
| Defendants. | ) |

Before the Court are Plaintiffs' and Defendants' cross motions for summary judgment. [ECF Nos. 40; 44]. Plaintiffs allege Defendants violated § 504 of the Rehabilitation Act of 1973 ("§ 504") and Title II of the Americans with Disabilities Act ("ADA") when they offered Plaintiff G.L. ("GL")[1] an independent education plan ("IEP") on July 30, 2013. [ECF Nos. 5 at 4; 44 at 1-2, 5]. Although Defendants requested oral argument, this matter can be appropriately resolved without it. *See* Local Rule 7(c). For the reasons stated below, Plaintiffs' motion for summary judgment, [ECF No. 44], is DENIED, and Defendants' motion for summary judgment, [ECF No. 40], is GRANTED.

---

[1] The Court issued a previous ruling using the parties' true names. [ECF No. 18 at 2–3]. For clarity and consistency, the Court will continue to use the parties' true names throughout this Order. Brian Doe is a pseudonym for GL. *Id.* Jane Doe is a pseudonym for Linda Pratt. *Id.* Robert Doe is a pseudonym for Paul Lockard. *Id.*

I. BACKGROUND

GL was born on February 27, 1996. [ECF No. 41 at 69].[2] Dr. Linda Pratt and Dr. Paul Lockard are GL's mother and father. *Id*. When GL was approximately seventeen or eighteen months of age, he suffered a traumatic brain injury. *Id*. at 70. At age six, GL was diagnosed with Attention Deficit Disorder ("ADHD")-Predominately Inattentive Type. *Id*. He was also later diagnosed with Dysgraphia and Nonverbal Learning Disorder. *Id*. GL's § 504 plan from his eighth grade year states "[a]s a result of these conditions [GL] frequently requires significantly more time to complete assignments and tests, including standardized tests, and needs support for his organization deficits." [ECF No. 44-2 ¶ 2]. In July 2007, when GL was eleven, he underwent two days of evaluation at the University of Iowa's Belin-Blank Center for Gifted Education. [ECF No. 41 at 71]. Although the evaluation revealed GL was above average in intelligence, it also showed he had trouble processing information quickly. *Id*. GL scored in the 99th and 97th percentile, in the verbal comprehension and working memory indices. *Id*. However, GL performed poorly on the processing speed index, scoring in the 9th percentile. *Id*.

In August 2010, GL began his freshman year at Pleasant Valley High School in Bettendorf, Iowa. *Id*. In the spring of 2011, GL was determined eligible for special education and services under 20 U.S.C. § 1420, *et seq*., the Individuals with Disabilities Education Act ("IDEA"). [ECF No. 41 at 70]. Defendant Pleasant Valley Community School District ("PVCSD") developed and implemented an IEP for GL. *Id*. The IEP was modified and redeveloped multiple times over the

---

[2] Because of the statute of limitations, the Court dismissed Plaintiff's Complaint to the extent it alleged claims based on conduct occurring before July 29, 2013. [ECF Nos. 18; 27]. As such, Plaintiffs cannot premise their claims on actions occurring prior to July 29, 2013. [ECF No. 27]. But Plaintiffs are allowed to present evidence predating July 29, 2013 to the extent that evidence serves as "relevant background" to their timely claim. *Id*. Thus, the Court reviews briefly the prior events to provide a useful context for the current proceedings.

course of the next year and a half. *Id*. Also, in the spring of 2012, GL participated in a new independent educational evaluation by the University of Iowa. [ECF No. 41-1 at 32]. Unhappy with GL's progress, Pratt and Lockard withdrew GL from PVCSD after the end of his sophomore year. [ECF No. 41 at 70]. In the fall of 2012, GL enrolled in ATG Academy in Warminster, Pennsylvania, a program designed to address learning disabilities. [ECF No. 41-1 at 32].

In April 2013, a representative of PVCSD contacted GL's parents to schedule an IEP team meeting to discuss potential programming for the 2013-2014 school year. [ECF No. 40-2 ¶ 21]. IEP meetings were held on May 1, 2013 and May 15, 2013. *Id*. GL's parents were invited to these meetings but declined to attend. *Id*. ¶ 22. GL's parents and Defendants exchanged a number of e-mails and phone calls between April 25, 2013 and July 30, 2013 about updating GL's IEP. *Id*. On July 30, 2013, Defendants held an IEP meeting for GL. *Id*. ¶ 23. The meeting was attended by Principal Mike Zimmer; Mollie Conrad, a social worker with the Mississippi Bend Area Education Agency ("MBAEA"); Sherri Bitz, a special education teacher; and Pratt. [ECF Nos. 40-2 ¶ 23; 41 at 87; 41-1 at 115; 50 at 11]. The IEP offered at this meeting was an updated version of GL's prior IEP with PVCSD. [ECF No. 40-2 ¶ 26]. The July 30, 2013 IEP incorporated changes and updates based on Pratt's communications to the district representatives. *Id*. The educational professionals at the meeting considered Pratt's suggestions as well as the independent educational evaluation conducted by the University of Iowa in the spring of 2012. *Id*. ¶ 27. Plaintiffs concede the 2012 independent educational evaluation was considered by Defendants at the meeting but claim Defendants failed to incorporate recommendations in the evaluation essential to provide GL with a free appropriate public education ("FAPE"). [ECF No. 50 at 12].

Pratt gave the school permission to implement the July 30, 2013 IEP. *Id*. at 11. However, Pratt claims she gave permission only because Defendant MBAEA told her that, because of a change in the State of Iowa's procedures, the IEP would be problematic to implement later. *Id.* Pratt also says she did not agree with the content of the IEP as of July 30, 2013 but says she was told by MBAEA more would be done to incorporate the results of the 2012 independent education evaluation. *Id*. On August 14, 2013, Defendants contacted Pratt to discuss modifications to the IEP, and Defendants made adjustments to the IEP based on conversations at the July 30, 2013 meeting. [ECF No. 40-2 ¶¶ 31, 32]. Plaintiffs admit Mr. Zimmer and Ms. Conrad did not have any bad intent at the July 30, 2013 IEP meeting. [ECF Nos. 40-2 ¶ 38; 50 at 15]. Pratt admits Principal Zimmer "worked really hard to provide accommodations for [GL]" and Conrad "probably did the best she could to come up with some IEP that offered something different than the previous one." [ECF No. 40-2 ¶ 39]. Ultimately, the July 2013 IEP was not used because GL's parents decided to not return GL to PVCSD for the 2013-2014 school year. [ECF No. 50 at 14].

On August 7, 2013, Plaintiffs filed a due process complaint with the Iowa Department of Education. [ECF No. 41-1 at 30]. The due process complaint alleged the July 2013 IEP did not provide GL with a FAPE as required by the IDEA. *Id*. The complaint was dismissed because an ALJ with Iowa Department of Inspections and Appeals determined GL was not a resident of Iowa and as such, Defendants were not required to provide GL a FAPE. *Id*. at 38–39. Plaintiffs then filed the instant action on July 29, 2015. [ECF No. 18 at 1]. Plaintiffs now claim the July 2013 IEP violated § 504 and the ADA. [ECF Nos. 5 at 4; 44 at 1–2]. Additional facts will be discussed as they become relevant.

## II.  SUMMARY JUDGMENT STANDARD

Summary judgment is proper when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Paulino v. Chartis Claims, Inc.*, 774 F.3d 1161, 1163 (8th Cir. 2014). "A dispute is genuine if the evidence is such that it could cause a reasonable jury to return a verdict for either party; a fact is material if its resolution affects the outcome of the case." *Amini v. City of Minneapolis*, 643 F.3d 1068, 1074 (8th Cir. 2011) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 252 (1986)).  Courts must view "'the facts in the light most favorable to the nonmoving party and giv[e] that party the benefit of all reasonable inferences that can be drawn from the record.'" *Pedersen v. Bio-Med. Applications of Minn.*, 775 F.3d 1049, 1053 (8th Cir. 2015) (quoting *Johnson v. Wells Fargo Bank, N.A.*, 744 F.3d 539, 541 (8th Cir. 2014)).  To preclude the entry of summary judgment, the nonmovant must make a sufficient showing on every essential element of its case for which it has the burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–323 (1986).  But "the nonmoving party [need not] produce evidence in a form that would be admissible at trial in order to avoid summary judgment." *Id.* at 324.

## III.  ANALYSIS

Plaintiffs allege Defendants violated § 504 and the ADA when they offered GL the July 2013 IEP. [ECF Nos. 5 at 4; 44 at 1–2, 5]. "To prevail on a claim under § 504 [and the ADA], a plaintiff must demonstrate that: (1) he is a qualified individual with a disability; (2) he was denied the benefits of a program or activity of a public entity which receives federal funds; and (3) he was discriminated against based on his disability." *Gorman v. Bartch*, 152 F.3d 907, 911–12 (8th Cir. 1998) (footnote omitted) (citing 29 U.S.C. § 794(a)); *see Wojewski v. Rapid City Reg'l Hosp., Inc.*, 450 F.3d 338, 344 (8th Cir. 2006) ("Although the ADA has no federal funding requirement, 'it is

otherwise similar in substance to the Rehabilitation Act, and cases interpreting either are applicable and interchangeable.'" (quoting *Gorman*, 152 F.3d at 12)); *Hoekstra v. Indep. Sch. Dist. No. 283*, 103 F.3d 624, 626 (8th Cir. 1996) ("This court has held that enforcement remedies, procedures and rights under Title II of the ADA are the same as under § 504, and has consistently applied § 504 case law to ADA cases.").

Additionally, to prevail on a claim under § 504 and the ADA, in the context of the education of disabled children, "the plaintiff must prove that school officials acted in bad faith or with gross misjudgment." *Birmingham v. Omaha Sch. Dist.*, 220 F.3d 850, 856 (8th Cir. 2000). "[B]ad faith or gross misjudgment requires 'something more' than mere non-compliance with [§ 504 or the ADA]." *B.M. ex rel. Miller v. S. Callaway R-II Sch. Dist.*, 732 F.3d 882, 887 (8th Cir. 2013) (quoting *Monahan v. Nebraska*, 687 F.2d 1164, 1170 (8th Cir. 1982)). Bad faith or gross misjudgment may be shown by "a substantial departure from accepted professional judgment, practice or standards as to demonstrate that the person[s] responsible actually did not base the decision on such a judgment." *Monahan*, 687 F.2d at 1171 (quoting *Youngberg v. Romeo*, 457 U.S. 307, 314 (1982)). Congress did not intend to create liability under § 504 or the ADA when state educational professionals did not "depart grossly from accepted standards among educational professionals." *Id.*

### A. Bad Faith

Here, there is no evidence from the July 30, 2013 IEP meeting that any school officials acted in bad faith. In fact, Plaintiffs admitted Principal Zimmer and Mollie Conrad appeared to be operating in good faith. [ECF No. 40-2 ¶ 38]. Pratt admitted Principal Zimmer "worked really hard to provide accommodations for [GL]" and Conrad "probably did the best she could to come up with some IEP that offered something different than the previous one." *Id.* ¶ 39. Plaintiffs

have not pointed to any evidence occurring on July 29, 2013, or after, showing Defendants acted in bad faith. Plaintiffs have not even argued Defendants acted in bad faith. For these reasons, Plaintiffs have failed to show Defendants acted in bad faith.

### B. *Gross Misjudgment*

As an initial matter, Plaintiffs' argument that gross misjudgment should not be required for Plaintiff to prevail is rejected. As support for this proposition Plaintiffs cite Mark C. Weber, *Procedures and Remedies Under Section 504 and the ADA for Public School Children with Disabilities*, 32 J. Nat'l Ass'n Admin. L. Judiciary 611, 628 (2012). Weber discusses *Brown v. Dist. 299—Chi. Pub. Schs.*, 762 F. Supp. 2d 1076, 1083 (N.D. Ill. 2010), a district court case that declined to require a showing of bad faith or gross misjudgment. In *Brown*, the district court's decision to not require a showing of bad faith or gross misjudgment was based on the court's inability to find precedent by the United States Court of Appeals for the Seventh Circuit expressly requiring it. 762 F. Supp. 2d at 1085 n.8. Here, the United States Court of Appeals for the Eighth Circuit has expressly held that a showing of bad faith or gross misjudgment is required to prevail under § 504 and the ADA in the context of the education of disabled children. *B.M. ex rel. Miller*, 732 F.3d at 887.

Although Plaintiffs did not argue Defendants acted in bad faith, Plaintiffs do argue Defendants acted with gross misjudgment. Plaintiffs essentially argue the July 2013 IEP failed to provide GL with a FAPE under the IDEA, and therefore gross misjudgment can be inferred. However, "statutory noncompliance alone does not constitute bad faith or gross misjudgment." *Id*. Plaintiffs also briefly argue "[g]ross misjudgment is evidenced by the fact that the District never provided a *means* for [GL] to increase his writing fluency—yet their IEPs kept including the expectation that he would do so." [ECF No. 44 at 21]. But this argument is contrary to the plain

language of the July 2013 IEP.[3] The July 2013 IEP states that a measurable annual goal will be for GL to increase his writing fluency in thirty-six weeks, "after direct instruction, coaching, and support in the use of an organizational routine, graphic organizer and assistive technology." [ECF No. 41-1 at 92, 93, 94]. The July 2013 IEP also states "[GL] will consistently use an organizational framework to organize his daily routines, manage new learning with respect to assignment expectations/initiation and completion, and complete longer-term projects and papers so that the outcome is increased writing fluency . . . ." *Id*. These statements were listed under the goal area for "communication." *Id*. at 92. The Court acknowledges the writing fluency goal was originally removed from the July 2013 IEP. [ECF No. 48-4 at 50]. But after objections about this change from GL's parents, PVCSD adjusted the July 2013 IEP to consider writing fluency concerns. *Id*. at 53, 57. PVCSD believed focusing on organization would benefit GL's writing. *Id*. at 55. Even though writing fluency may not have been a stand-alone goal, the July 2013 IEP did envision improving GL's writing fluency and provided means to do so.

Plaintiffs also state Defendants removed GL from honors classes in the July 2013 IEP. Plaintiffs make this statement a number of times throughout their brief but provide no support for it in the record, or in their Statement of Facts. [ECF No. 44 at 12, 23, 27; 44-2]. Although Plaintiffs do not specifically argue that removing GL from honors classes in the July 2013 IEP constitutes gross misjudgment, the Court addresses this argument nonetheless. The July 2013 IEP did include a proposed schedule for GL for the 2013-2014 school year. [ECF No. 48-4 at 50]. This proposed schedule does not appear to include any honors courses. *Id*. However, the Court was not able to find anywhere in the record that Plaintiffs requested for the 2013-2014 year that GL take a specific

---

[3] This argument also seems to be premised on conduct by Defendants that occurred before July 29, 2013. To the extent it is, the Court does not consider it. *See* [ECF Nos. 18; 27].

honors course, and then was denied by Defendants. Indeed, at the July 30, 2013 IEP meeting, Pratt did not object to the 2013-2014 proposed schedule offered by Defendants, rather Plaintiffs' problems were with the accommodations and specially designed instruction. [ECF No. 41 at 53].

Regardless, though, whether Defendants removed GL from honors courses or changed GL's goal in writing fluency, Plaintiffs "have not presented any evidence regarding what an accepted professional judgment would have been under the circumstances or how [Defendants'] conduct substantially departed from such a judgment." *See B.M. ex rel. Miller*, 732 F.3d at 888. Plaintiffs have submitted the 2012 independent education evaluation produced by the University of Iowa. [ECF No. 41 at 158]. The evaluation was conducted to evaluate GL's educational needs and make recommendations on how to meet those needs. *Id.* Plaintiffs argue Defendants failed to incorporate recommendations in the evaluation essential to provide GL with a FAPE. [ECF No. 50 at 12]. But even assuming the July 2013 IEP failed to provide GL with a FAPE, gross misjudgment requires something more than mere statutory noncompliance. *See B.M. ex rel. Miller*, 732 F.3d at 887. Plaintiffs have not provided an expert opinion that an accepted professional judgment under these circumstances would have been for Defendants to comply with all the recommendations of the 2012 independent educational evaluation.[4] Indeed, when formulating an IEP, a school must "consider" outside evaluations but it need not incorporate its recommendations. *K.E. ex rel. K.E. v. Indep. Sch. Dist. No. 15*, 647 F.3d 795, 806 (8th Cir. 2011). Plaintiffs have even acknowledged "school districts are not required to follow all of the expert advice they receive . . . ." [ECF No. 50 at 12 n.29]. Here, Defendants considered the 2012 independent educational evaluation at the July 30, 2013 IEP meeting. *Id.* at 12.

---

[4] The University of Iowa independent evaluators never assessed whether any of GL's previous IEPs adequately met their recommendations, nor did they ever make a determination about the adequacy of the educational program provided by Defendants. [ECF No. 62-2 ¶ 80].

Plaintiffs also argue gross misjudgment is shown because PVCSD failed to reassess GL's IEP even though his productivity and success declined in his final semester at PVCSD. *Id*. at 7. This argument is belied by the fact Defendants did make changes to GL's July 2013 IEP based on recommendations from Pratt. [ECF Nos. 40-2 ¶ 24; 50 at 11–12]. After the July 30, 2013 meeting, Defendants even contacted Plaintiffs to discuss more modifications and provide additional modifications to the IEP. [ECF No. 40-2 ¶ 31]. Plaintiffs even admit PVCSD offered GL something different in the July 2013 IEP by implementing the Kansas University ("KU") strategy to improve GL's organization and writing fluency. [ECF Nos. 44 at 17; 48-4 at 38]. Plaintiffs' main contention with the July 2013 IEP seems to be Defendants acted with gross misjudgment by failing to incorporate more of the results of the 2012 independent education evaluation. [ECF No. 50 at 7, 12]. However, as stated above, Defendants were only required to consider the evaluation. Moreover, Plaintiffs have not shown an accepted professional judgment under these circumstances would have been for Defendants to comply with all the recommendations Plaintiffs wanted incorporated into the IEP, and by not doing so Defendants grossly departed from that accepted professional judgment.

Further, the July 2013 IEP was based on a version of the IEP this Court previously determined had provided GL with a FAPE. [ECF No. 40-2 ¶¶ 9, 10, 27]. The July 2013 IEP offered GL educational accommodations such as: a reduced workload, extending time to complete assignments, testing that reduced written work, chunking of assignments and assessments, a modified class load, structuring his core classes with skills support in a layered fashion, pre-teaching, assistive technology, and program modifications to include computer generated math curriculum that teaches at the student's pace. *Id*. ¶ 30. These accommodations are similar to accommodations this Court found to have provided GL with a FAPE in *Pratt v. Pleasant Valley*

*Cmty. Sch. Dist.*, No. 3:13-cv-00097-SMR-RAW (S.D. Iowa Aug. 13, 2015) (August 13, 2015 dismissal ruling found at ECF No. 40 at 12). Plaintiffs do not dispute that these accommodations were made in the July 2013 IEP, but argue these accommodations do not adequately meet GL's needs. [ECF No. 50 at 13].

But as previously stated, Plaintiffs have not provided the Court with an expert opinion that shows the accommodations made to GL in the July 2013 IEP grossly depart from accepted standards among educational professionals. "'[J]udges are not trained educators,'" and we are cautioned not to substitute our "'own notions of sound educational policy for those of the school authorities which [we] review.'" *J.B. ex rel. Bailey v. Avilla R-XIII Sch. Dist.*, 721 F.3d 588, 594 (8th Cir. 2013) (alterations in original) (first quoting *E.S. v. Indep. Sch. Dist. No. 196*, 135 F.3d 566, 569 (8th Cir. 1998); and then quoting *Bd. of Educ. v. Rowley*, 458 U.S. 176, 205–06 (1982)). "Under these circumstances, the ADA and § 504 do not permit the federal courts to second-guess the educational decisions of school officials." *B.M. ex rel. Miller*, 732 F.3d at 888–89 (affirming a grant of summary judgment where plaintiffs failed to show defendant departed grossly from an accepted professional judgment, practice, or standard). "Nothing in the record suggests anything more than disagreement between a school and a concerned parent as both struggled to meet [GL's] needs." *See id.* Therefore, even viewing the evidence in the light most favorable to the Plaintiffs, giving them the benefit of all reasonable inferences, this Court cannot conclude a jury could find Defendants acted in bad faith or with gross misjudgment.[5]

---

[5] A failure to adequately show bad faith or gross misjudgment is dispositive of Plaintiffs' claims. Therefore, the Court declines to address Defendants' and Plaintiffs' remaining arguments.

## IV.  CONCLUSION

For the foregoing reasons, Plaintiffs' motion for summary judgment, [ECF No. 44], is DENIED, and Defendants' motion for summary judgment, [ECF No. 40], is GRANTED.

IT IS SO ORDERED.

Dated this 5th day of December, 2017.

                                                        _____
                                                        STEPHANIE M. ROSE, JUDGE
                                                        UNITED STATES DISTRICT COURT